UNITED STATES of America, Plaintiff–Appellee,

v.

Steven Donald KNEZEK, Defendant–Appellant.

No. 91–2019.

United States Court of Appeals, Fifth Circuit.

June 16, 1992.

Cindy L. Salsbury, Edison, N.J., for defendant-appellant.

Peggy Morris Ronca, Paula C. Offenhauser, Asst. U.S. Attys., Ronald G. Woods, U.S. Atty., Houston, Tex., for plaintiff-appellee.

Before BRIGHT,[1] JOLLY, and BARKSDALE, Circuit Judges.

BARKSDALE, Circuit Judge:

Steven Donald Knezek appeals his convictions for illegal firearms possession, challenging primarily the district court's refusal to hold a suppression hearing and the concomitant admission of inculpatory statements. Review of this, and the other issues, is narrowed by his failure to preserve them in district court. We AFFIRM.

1. Senior Circuit Judge for the Eighth Circuit, sitting by designation.

## I.

In early May 1990, Knezek and Milton Huff drove into the United States from Mexico at the Lincoln–Juarez Bridge Port-of-Entry, near Laredo, Texas. Knezek was driving. The vehicle was referred to the secondary inspection station, where customs inspector Cantu asked the men to exit the car, produce identification, and "unload anything that they had". Knezek and Huff placed their luggage on an examining table.

In a bag that Huff identified as his, Cantu found several syringes.[2] Believing that he might discover narcotics, Cantu inspected the remaining luggage. After discovering ammunition of various caliber in a suitcase, Cantu asked Knezek and Huff: "Where are the guns?" Knezek responded: "They're in there." Cantu continued to search the suitcase and found, wrapped in clothing, a Smith and Wesson .44 magnum revolver and a Colt Trooper .357 magnum revolver. Both weapons were loaded; the Smith and Wesson's serial number had been obliterated.

Following discovery of the weapons, another inspector informed Cantu that marijuana residue had been found in the car. Cantu advised him of the weapons, and they frisked Knezek and Huff and placed them in separate "search rooms". In the room, Cantu instructed Knezek to empty his pockets and place his hands on the wall; a "complete personal search" was then performed. After leaving to search Huff, Cantu returned to Knezek's room and asked: "Who's the owner of the guns?" Knezek replied: "They're mine. I bought them at a gun place."

Customs special agent Salinas was called in by the inspectors. Salinas identified himself, informed Knezek that he was there because of discovery of the revolvers, and advised Knezek of his Miranda rights.[3] Knezek stated that he understood them. Salinas then asked where the guns had been obtained; Knezek stated that "he had purchased them at a gun shop back home". When asked about the obliterated serial number, Knezek responded: "Yeah, I know." Refusing to answer further questions, he stated: "Well, just take me to jail."

Knezek was arraigned and appointed counsel from the Federal Public Defender's office. Pursuant to the district court's local rules, June 11, 1990, was designated as the deadline for pretrial motions; and trial was set for the July 1990 term.[4] In a five-count indictment filed against Knezek and Huff, Knezek was charged in three: knowing transportation in interstate and foreign commerce of a revolver with an obliterated serial number, in violation of 18 U.S.C. §§ 922(k), 924(a)(1)(B), and 2 (count 1); and, being a felon in possession of the Smith and Wesson revolver (count 2) and the Colt Trooper revolver (count 3), in violation of 18 U.S.C. § 922(g)(1).

Several pretrial hearings were held. But, as discussed in part II.A., Knezek did not move prior to trial to suppress his statements at the port of entry. Moreover, during the one-day trial on July 23, 1990, Knezek did not object to the introduction (through testimony of Cantu and Salinas) of those statements, nor did he cross-examine government witnesses on alleged coercion. Knezek did not testify, but Huff (who pleaded guilty prior to Knezek's trial) testified on his behalf and stated that he (Huff) had borrowed the weapons from a friend and that Knezek did not know anything about them. Although Knezek moved, unsuccessfully, for judgment of acquittal at the close of the government's case, he did not renew that motion after presentation of all the evidence. The jury returned a guilty verdict on all three counts.

A sentencing hearing was held that December; and Knezek was sentenced, *inter*

---

**2.** When Cantu asked Huff their purpose, Knezek interrupted and stated that Huff was a diabetic and needed them for daily injections.

**3.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**4.** *See* S.D.Tex.Loc.R. 7(E) (West 1990) ("At the time of arraignment, the judicial officer shall set the time for pretrial motions.").

*alia,* to 15 years' imprisonment on count 3.[5]

## II.

■ Knezek contends that (1) the district court erred in both refusing to hold a suppression hearing and admitting in evidence his statements at the port of entry; (2) extrinsic offense evidence was improperly admitted; (3) there was insufficient evidence to prove knowing possession of the firearms; and (4) the government's closing argument constituted prosecutorial misconduct.[6]

### A.

Knezek maintains that the district court erred in denying his "numerous requests" for a suppression hearing regarding incriminating statements he made to law enforcement agents, and that, thereafter, those statements were admitted in evidence erroneously, including because of coercion and his not having been advised of his Miranda rights. Knezek, however, failed to timely and properly move to suppress, as required by the local rules and Federal Rule of Criminal Procedure 12.[7] Pursuant to the latter, motions to suppress "must be raised prior to trial". Fed.R.Crim.P. 12(b)(3). Failure to do so constitutes a waiver, "but the court for cause shown may grant relief from the waiver." Fed.R.Crim.P. 12(f).

When Knezek finally, orally, moved to suppress, at the start of trial, the district court ruled that, for several reasons, the matter had been waived.[8] We review that ruling for abuse of discretion. *United States v. Marx,* 635 F.2d 436, 441 (5th Cir. Unit B 1981); *United States v. Bullock,* 590 F.2d 117, 120 (5th Cir.1979).

■ A district court does not abuse its discretion under Rule 12(f) in denying a suppression motion solely on the ground that the defendant failed to comply with pretrial procedures. *Marx,* 635 F.2d at 440–41; *Bullock,* 590 F.2d at 120. Knezek unquestionably failed to comply with Rule 12 and the local rules. Nor, pursuant to

---

5. Knezek was sentenced to 42 months' imprisonment on count 1 (transportation). Because he had at least three previous convictions for serious felony offenses (burglary), Knezek was subject to an enhanced sentence under 18 U.S.C. § 924(e)(1) for his § 922(g)(1) convictions (felon in possession). Accordingly, the district court vacated the conviction on count 2, and sentenced him to 15 years' imprisonment on count 3, to run concurrent with the sentence on count 1.

6. In a *pro se* brief filed after appointed counsel filed Knezek's affirmative brief, Knezek raises ineffective assistance of counsel at trial. This contention was not presented in the district court. We decline generally to consider ineffective assistance claims not so raised, because a record has not been developed on the merits of the allegations. *E.g., United States v. Gaitan,* 954 F.2d 1005, 1007 n. 4 (5th Cir.1992). We will, however, consider such a claim in those rare instances where its merits may be fairly evaluated from the record. *Id.* We do not find this to be such a case. Accordingly, we do not address this claim, but without prejudice to it being raised under 28 U.S.C. § 2255. *Id.* at 1008 n. 4.

7. Southern District of Texas Local Rule 7 provides in part:
   **A. Implementation.** Federal Rule of Criminal Procedure 12 and this rule are to be followed to ensure consistent and efficient practice before this court. *Motions and responses*

that do not comply with these rules are waived.
   **B. Form.** *Pretrial motions shall be in writing and specifically state the basis for the motion* . . . . .
   \* \* \* \* \* \*
   **E. Submission.** At the time of arraignment, the judicial officer shall set the time for pretrial motions . . . . .
   S.D.Tex.Loc.R. 7(A), (B) & (E) (West 1990) (emphasis added). Federal Rule of Criminal Procedure 12 states in part:
   **(b) Pretrial Motions.** Any defense, objection or request which is capable of determination without the trial of the general issue may be raised before trial by motion. Motions may be written or oral at the discretion of the judge. *The following must be raised prior to trial:*
   \* \* \* \* \* \*
   (3) *Motions to suppress evidence. . . .*
   \* \* \* \* \* \*
   **(f) Effect of Failure To Raise Defenses or Objections.** *Failure by a party to raise defenses or objections or to make requests which must be made prior to trial . . . shall constitute waiver thereof, but the court for cause shown may grant relief from the waiver.*
   Fed.R.Crim.P. 12(b), (f) (emphasis added).

8. The motion was not made until after it had been announced that the jury was ready to be brought in and the rule to exclude witnesses, Fed.R.Evid. 615, had been invoked by Knezek.

Rule 12(f), did he seek to show cause for relief from the finding of waiver. But, even assuming *arguendo* that the motion to suppress was made "prior to trial", other factors support there not being an abuse of discretion in this case; waiver is firmly grounded in those bases as well.

The deadline for pretrial motions was June 11, 1990. *A motion to suppress was never filed, either before or after that date.* On June 26, Knezek's lawyer filed a motion to withdraw, stating that Knezek was dissatisfied, because, among other things, Knezek "seem[ed] to think that Counsel should have filed some kind of pretrial motion in his case." Knezek's first informal request for a suppression hearing occurred two days later, well past the pretrial motion deadline. Moreover, his stated reason for wanting an unidentified statement suppressed was his claim that he had not made it; but the court noted that the issue, as framed by Knezek, was one to be determined by the jury, not in a suppression hearing.[9]

The motion to withdraw was granted on July 2; new counsel was appointed that day. When Knezek moved on July 6 to extend the pretrial motion deadline, as well as in the July 10 hearing on it, he did not state that he wanted to move to suppress any evidence. And, the motion was withdrawn at a hearing the next day, even though the district court had stated it would be granted, but would delay trial, and had warned, after being advised of the withdrawal, against trying later to file such motions.[10]

At a hearing on Friday, July 20, three days prior to trial on Monday, Knezek, *for the first time*, raised the issue of coercion and an alleged lengthy interrogation. However, his lawyer was uncertain as to which interrogation these concerns related.[11] In any event, this led to the government's announcement, at the start of trial, that any statements taken at the jail (several days after the statements were made at the port of entry) would not be introduced. Knezek's counsel then requested a suppres-

---

**9.** The following colloquy took place:

THE COURT: What is it you would like [your counsel] to do at this point?

DEFENDANT KNEZEK: Well, at this point I'd like ... to suppress a[n] oral statement they're saying I made. And [my lawyer's] saying I made it too. *I'm saying I didn't make it.*

THE COURT: Well, but that's not grounds for suppression.

\*    \*    \*    \*    \*    \*

DEFENDANT KNEZEK: .... It's just that I can't get anything done.

THE COURT: Well, maybe there's nothing to do. You know. In other words, to be perfectly blunt about it, if the facts are what your lawyer says there's nothing to do anyway. When you drive up to the bridge they're entitled to ask you questions. There's nothing to suppress. Now if you didn't say those statements that's not a question of suppression. I wouldn't pass on that anyway. If the agent gets up and says he said this, and you say, I didn't say it. That's not for me to decide; it's for the jury.

(Emphasis added.)

**10.** When Knezek's new lawyer moved on July 6 to extend the pretrial motion deadline, he did not identify any motion to be filed. At the July 10 hearing on the motion, the court stated that it would be willing to grant the motion, but that, because of the closeness of trial, this would cause Knezek's trial to be postponed from July to August or September. Knezek's lawyer stated

that he would discuss this with Knezek and advise the court. The next day, Knezek announced ready for trial in July. The district court stated:

> *Okay. And I want you to understand this. I don't want to hear later about how [Knezek] missed out in filing this, that, and the other, motions or discovery and all that. Are you ready?*

(Emphasis added.) Knezek's lawyer responded: "Well, I looked at the file and the only thing I have a question on would be the alleged confession that [Knezek] made to the agents." *But, he then confirmed that he was ready for trial.*

**11.** During the July 20 hearing, Knezek's lawyer stated that Knezek claimed he had been interrogated for an "extensive period of time ..., and I know that the court would probably not be too receptive to entertain something to suppress those confessions, in that they were coerced". The district court responded, "[n]ot at this late stage", but informed counsel that he could cross-examine the government's witnesses on that aspect if he wished. The government's lawyer then asked Knezek's lawyer which interrogation was being referred to, and related that Knezek had been questioned twice on the day of the arrest and again six days later in jail. Because of concern that the interrogation in jail may have taken place after Knezek had been appointed counsel, the district court instructed the government's counsel to investigate.

sion hearing concerning possible coercion and duress as to the statements made at the port of entry. (As noted, no motion was ever filed.) The district judge refused to grant a hearing, noting the delay, the prior proceedings, and that no motion had been filed, and ruling that the matter had been waived; but, he ruled that if Knezek's counsel wanted to develop those issues at trial, he would possibly grant a mistrial if coercion was proven.[12]

Nevertheless, Knezek's counsel did not do so. And, when the statements were admitted at trial, he did not object to their admission. Moreover, Knezek's defense at trial was not that he made the statements under duress or while unaware of his rights, but that he had simply not made them. As noted, Knezek relied also on Huff's testimony that Huff had borrowed the weapons and Knezek was not aware of them. Furthermore, Knezek never raised in district court the point he primarily relies upon here—that he had not been advised of his Miranda rights.

The district judge did not abuse his discretion in ruling that a waiver occurred; accordingly, we do not reach the application of *Miranda* or the other bases raised here for suppressing the statements.

### B.

■ Knezek maintains that, under Rule 404(b), the district court erred in admitting evidence that Knezek and Huff had purchased the guns in exchange for marijuana, and that syringes, ammunition, and marijuana residue were found in the search of the car.[13] However, Knezek did not object at trial to the admission of this evidence. Therefore, we review only for plain error. *See* Fed.R.Evid. 103. "[P]lain error is an error 'so obvious that our failure to notice it would seriously affect the fairness, integrity, or public reputation of [the] judicial proceedings and result in a miscarriage of justice.'" *United States v. Fortenberry*, 914 F.2d 671, 673 (5th Cir.1990) (quoting *United States v. Graves*, 669 F.2d 964, 971 (5th Cir.1982)), *cert. denied*, — U.S. —, 111 S.Ct. 1333, 113 L.Ed.2d 265 (1991).

■ For several obvious reasons, there is no plain error. For example, evidence that marijuana residue and ammunition were found in the search of the car was also elicited through the direct testimony of Huff, Knezek's witness. And, on cross-examination, Huff stated that he "might've given my friend a little marijuana to borrow the guns."

### C.

■ Knezek next maintains that the evidence was insufficient to establish that he knowingly possessed the firearms. But, as noted, he failed to renew his motion for judgment of acquittal at the close of the evidence. This failure constitutes a waiver

12. As noted, at the start of trial, the government announced that it would not introduce any statements taken at the jail. With respect to the earlier statements, however, Knezek's lawyer stated:

> MR. JAIME: Well, for the record, I'd just like to put that on. We feel that it was coerced and under duress in that he was detained seven hours and questioned several times by several people.
>
> THE COURT: Well, let me say this to you [Knezek's lawyer]. *There was no motion filed on either of these points and I think the matter is waived.* I brought up the other day [July 20] this question of talking to him after he had a lawyer and ... it's just as well the government concedes that. I'm not going to stop at this point and conduct a suppression hearing on the other.
>
> Now, I'll listen to the evidence.... I presume the government is going to put on witnesses and I guess you're going to cross-examine them about what they said or did to him or whatever, and *if I think there's something in there that's really egregious, if I think that they really did coerce a statement out of him, then I can always say so and if we have to, we'll declare a mistrial....* As I say, I'm reluctant to start all over again, and certainly at this late stage, to bring up a whole hearing on that issue.

(Emphasis added.)

13. Fed.R.Evid. 404(b) states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

(Version in effect prior to December 1, 1991).

of any objection to the motion's denial, restricting review to whether there has been a manifest miscarriage of justice. *United States v. Munoz–Romo*, 947 F.2d 170, 176–77 (5th Cir.1991), *petition for cert. filed*, 60 U.S.L.W. 3719 (U.S. Jan. 7, 1992) (No. 91–1593).[14]

 Illegal possession of firearms may be either actual or constructive. *Id.* " 'Constructive possession' has been defined as ownership, dominion, or control over the contraband". *United States v. Smith*, 930 F.2d 1081, 1085 (5th Cir.1991). Cantu testified that Knezek stated that the guns were hidden in the suitcase before they were discovered. Cantu and Salinas testified that Knezek admitted ownership of the guns; Salinas, that Knezek stated that he knew that the serial number had been obliterated from one.

Moreover, constructive possession may also be inferred from the exercise of dominion or control over the vehicle in which contraband is found. *E.g., United States v. Perez*, 897 F.2d 751, 754 (5th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 177, 112 L.Ed.2d 141 (1990). Cantu testified, as did Huff, that Knezek was driving the vehicle when it was referred to secondary inspection. There was no manifest miscarriage of justice.

### D.

Knezek asserts that, during closing argument, the government's lawyer misstated the law on constructive possession and impermissibly injected his personal beliefs into the proceedings by commenting on Knezek's guilt and the credibility of witnesses. However, once again, Knezek did not timely object at trial. This failure requires us to, again, review for plain error. *United States v. Hatch*, 926 F.2d 387,

394 (5th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 2239, 114 L.Ed.2d 481 (1991). "We can reverse only if the government's closing arguments seriously affected the fairness or integrity of the proceedings and resulted in a miscarriage of justice." *Id.* In considering this question, the prosecutor's comments must be considered in the context of the entire trial. *Id.* Based on our review of the record, there is no plain error.

### III.

For the foregoing reasons, the judgment is

AFFIRMED.

---

**14.** Consequently, this Court's review is not under the usual standard of review for claims of insufficiency of evidence but rather under a much stricter standard. We are limited to the determination of "whether there was a manifest miscarriage of justice." Such a miscarriage would exist only if the record is "devoid of evidence pointing to guilt," or ... "because the evidence on a key element of the offense was so tenuous that a conviction would be shocking." In making this determination, the evidence, as with the regular standard [of] review for sufficiency of evidence claims, must be considered "in the light most favorable to the government, giving the government the benefit of all reasonable inferences and credibility choices." *United States v. Ruiz*, 860 F.2d 615, 617 (5th Cir.1988) (citations omitted).