United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 24, 2007**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

No. 06-10818

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**versus**

**BRENT ALAN MCDOWELL,**

**Defendant-Appellant.**

**Appeal from the United States District Court
for the Northern District of Texas**

Before HIGGINBOTHAM, DAVIS, and BARKSDALE, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:

On numerous bases, Brent Alan McDowell challenges his conviction and sentence for aiding and abetting the mailing of obscene material, in violation of 18 U.S.C. §§ 2(a) (aiding and abetting) and 1461 (knowingly using the United States mails to deliver obscene material). Primarily at issue is whether the evidence was sufficient to support that conviction. In that regard, McDowell failed to properly move at trial for judgment of acquittal. Accordingly, our standard of review is narrowed greatly to whether the conviction constitutes a manifest miscarriage of justice. That standard is satisfied, however, by the Government's

failing to show McDowell possessed the *mens rea* necessary to aid or abet the violation of § 1461.  **VACATED.**

I.

McDowell and his co-defendants, Gartman and Santilena, operated an internet enterprise, Conquernet, Inc., which used a website to sell pornographic videotapes, CDs, and DVDs.  Prior to some point in 2001, its profits had been split among Gartman (the owner), McDowell (who, among other things, was an officer of Bamcom, Inc., the website's billing contact), and Morse (who filled orders, processed payments, duplicated videos, and mailed them to customers).  Santilena apparently substituted into Morse's role and profit-sharing after Morse left the company in 2001.  Around that time, Gartman and McDowell moved to Reno, Nevada, in hopes of finding an environment more accepting of their business.

The investigation of Conquernet began in April 1998 in response to complaints concerning a related website and the unauthorized use of a post-office box.  (Concerning the convictions for that related website, *see* ***United States v. Ragsdale***, 426 F.3d 765, 768-70 (5th Cir. 2005), *cert. denied*, 126 S. Ct. 1405 (2006).)  Based on these complaints, authorities, including the Dallas, Texas, Police Department, the FBI, and the Postal Inspection Service, began investigating activities related to Conquernet.

Postal Inspectors' surveillance in July 1998 revealed Morse's mailing sadomasochistic videos using, as the return address, a

2

post-office box he formerly rented. Four years later, in August 2002 (approximately one year after Morse had left the company), while Gartman was living in Canada, Gartman and McDowell were stopped in separate vehicles at the Canadian border. Canadian customs officials confiscated, from a suitcase in Gartman's vehicle, 30 CDs containing a one-hour sadomasochistic movie.

On 17 December 2002, a Postal Inspector, posing as a Conquernet customer, ordered from its website a set of ten CD-ROM videos from the "Sexual Torture" category, including one titled "Torture Video 23", advertised as, among other things, "really hard S&M [sadistic and masochistic] action". Without offering a choice of shipping method, the website stated the videos would be delivered by United Parcel Service (UPS). The Postal Inspector paid using PayPal, whose records showed the payment went to Santilena's PayPal account and was ultimately shared with an account belonging to Gartman's wife. When the Postal Inspector did not receive that shipment by 7 January 2003, he sent an inquiry to the email address provided in his order's email receipt; that email address was later determined to belong to Santilena. A same-day response, signed "Webmaster", stated: "orders are sent ground UPS so it can take 3-9 business days depending on where you are at [*sic*]".

When the order had not been received by 28 January, the Postal Inspector emailed another inquiry, this time attaching his

3

transaction information. Again, he received a response from "Webmaster", stating the order had been shipped in late December by UPS ground.

On 29 January, a third email inquiry was sent. That same day, the Postal Inspector received a response, stating a duplicate of the order would be sent through the United States mails.

Both shipments (via UPS and the mails) were received. Fingerprints on the mailed package matched Santilena's. Part of "Torture Video 23" was identical to that contained on the CDs confiscated, as discussed above, by Canadian customs officials in 2002 from Gartman, when McDowell had been present in another vehicle.

McDowell, Gartman, and Santilena, were indicted. McDowell was charged in four counts: conspiring to violate federal obscenity laws (18 U.S.C. §§ 371, 1461, and 1465); and for violating, and aiding and abetting the violation of 18 U.S.C. § 1465 (two counts; knowingly using an interactive computer service to sell and distribute obscene material), and 18 U.S.C. § 1461 (knowingly using the United States mails to deliver obscene material). McDowell's motion to sever his trial from that of the other defendants was denied.

Following the four-day trial of McDowell, Gartman, and Santilena, a jury found Gartman guilty of conspiring to violate federal obscenity laws and of mailing obscene matter, but acquitted

4

him on his remaining charges. It acquitted Santilena on the two counts with which he was charged. It found McDowell guilty of aiding and abetting the use of the United States mails to deliver obscene material, but acquitted him on the remaining three counts.

McDowell's motions for judgment of acquittal at trial and post-verdict were denied, as was his new-trial motion. He was sentenced, *inter alia*, to 30 months' imprisonment.

## II.

McDowell raises numerous issues on appeal. Because the evidence is insufficient to convict, we do not reach his other contentions. In considering the sufficiency issue, the starting point, as always, is deciding which standard of review applies. Only through that prism can the claim be decided.

## A.

When an insufficiency-of-the-evidence claim of error is properly preserved through a motion for judgment of acquittal at trial, it is reviewed *de novo*. **Ragsdale**, 426 F.3d at 770. Under that standard, "'[w]e will affirm ... if a reasonable trier of fact could conclude ... the elements of the offense were established beyond a reasonable doubt, viewing the evidence in the light most favorable to the verdict and drawing all reasonable inferences from the evidence to support the verdict'". **Id.** at 770-71 (quoting **United States v. Floyd**, 343 F.3d 363, 370 (5th Cir. 2003)).

When, as here, however, a motion for judgment of acquittal insufficiently preserves a claim, our review is only for a manifest miscarriage of justice. *E.g.*, **United States v. Knezek**, 964 F.2d 394, 400 (5th Cir. 1992). Such a miscarriage "exist[s] only if the record is 'devoid of evidence pointing to guilt,' or ... 'because the evidence on a key element of the offense [i]s so tenuous that a conviction would be shocking'". *Id.* at 400 n.14 (quoting **United States v. Ruiz**, 860 F.2d 615, 617 (5th Cir. 1988)). In making this determination, as with the usual sufficiency standard, we consider the evidence "'in the light most favorable to the government, giving the government the benefit of all reasonable inferences and credibility choices'". *Id.* (quoting **Ruiz**, 860 F.2d at 617).

Defendants did not present evidence. McDowell moved for a judgment of acquittal after the Government rested. But that motion challenged only the obscenity *vel non* of the video, *not* whether the Government had proved McDowell possessed the requisite *mens rea*. McDowell's post-verdict written motion for judgment of acquittal contended, *inter alia*, the aiding-and-abetting *mens rea* evidence was insufficient.

To preserve *de novo* review, however, a defendant must specify at trial the particular basis on which acquittal is sought so that the Government and district court are provided notice. *E.g.*, **United States v. Phillips**, 477 F.3d 215, 219 (5th Cir. 2007) ("'[w]here, as here, a defendant asserts specific grounds for a

6

specific element of a specific count for a Rule 29 motion, he waives all others for that specific count'" (quoting *United States v. Herrera*, 313 F.3d 882, 884 (5th Cir. 2002) (en banc))), *petition for cert. filed*, 75 U.S.L.W. 3663 (U.S. May 30, 2007)(No. 06-1602); *United States v. Carbajal*, 290 F.3d 277, 288-89 n.19 (5th Cir. 2002) (motion for judgment of acquittal based on sufficiency challenge was "not adequate to put the government or the district court on notice that [defendant] challenged [the verdict on other grounds]"); *see also* FED. R. CRIM. P. 29.  As stated, claims not specified at trial are reviewed only under the extremely narrow manifest-miscarriage-of-justice standard.  *Phillips*, 477 F.3d at 219.

It bears noting that the Government did not raise McDowell's failure at trial to specify his insufficiency claim in either its written response to his post-verdict written motion or its brief here.  Even though McDowell's brief in this court does not mention standard of review, the Government, in its brief, erroneously states it should be *de novo*.  It goes without saying, however, that "we, not the parties, determine our standard of review".  *United States v. Davis*, 380 F.3d 821, 827 (5th Cir. 2004).

B.

"Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."  18 U.S.C. § 2(a).  For such aiding and

7

abetting, the Government must prove:  the elements of the substantive offense occurred; and the defendant "'associate[d] himself with the venture, ... participate[d] in it as in something ... he wishe[d] to bring about, ... [and sought] by his action to make it succeed'".  *Nye & Nissen v. United States*, 336 U.S. 613, 619 (1949) (quoting *United States v. Peoni*, 100 F.2d 401, 402 (2d Cir. 1938) (L. Hand, J.)).  Restated, the defendant must "consciously share[] in [the] criminal act".  *Pereira v. United States*, 347 U.S. 1, 11 (1954).

For the association element of aiding and abetting, this court has repeatedly held the defendant must have "'shared in the criminal intent of the principal[s]'".  *United States v. Smith*, 546 F.2d 1275, 1284 (5th Cir. 1977) (Wisdom, J.) (quoting and adopting aiding-and-abetting standard from *Johnson v. United States*, 195 F.2d 673, 675 (8th Cir. 1952)); *see also United States v. Longoria*, 569 F.2d 422, 425 (5th Cir. 1978) ("To prove association, there must be evidence to establish that the defendant 'shared in the criminal intent of the principal'." (quoting *Smith*, 546 F.2d at 1284)); *United States v. Cowart*, 595 F.2d 1023, 1031 (5th Cir. 1979) (citing *Pereira*, 347 U.S. at 11) (aiding and abetting are terms making the defendant a principal when he consciously shares in a criminal act)); *United States v. Fischel*, 686 F.2d 1082, 1087 (5th Cir. 1982) ("To aid and abet, the defendant must share in the intent to commit the offense".); *United States v. Jaramillo*, 42

8

F.3d 920, 923 (5th Cir. 1995) ("To associate with the criminal venture means that the defendant shared in the criminal intent of the principal."); *United States v. Lombardi*, 138 F.3d 559, 561 (5th Cir. 1998) ("[T]o aid and abet, a defendant must share in the intent to commit the offense as well as play an active role in its commission .... [H]e must have aided and abetted each material element of the alleged offense".).

As noted, for the four counts for which he was charged, McDowell was convicted only under 18 U.S.C. § 1461 (mailing obscene material). That section prohibits, *inter alia*, "knowingly us[ing] the mails" to mail, carry, or deliver any "obscene, lewd, lascivious, indecent, filthy or vile article, matter, thing, device, or substance". 18 U.S.C. § 1461. (Even though the undercover Postal Inspector received the order both through UPS and the mail, the Government did not charge any of the three defendants with violating 18 U.S.C. § 1462, which prohibits "knowingly us[ing] any express company or other common carrier or interactive computer service ... for carriage in interstate or foreign commerce" any "obscene, lewd, lascivious, or filthy book, pamphlet, picture, motion-picture film, paper, letter, writing, print, or other matter of indecent character".)

Accordingly, to convict McDowell for aiding and abetting a co-defendant's charged § 1461 offense (on which Gartman, but not Santilena, was convicted), the Government was required to prove

9

McDowell shared a co-defendant's criminal intent; i.e, that he *knew* the United States mails would be used to deliver the obscene material at issue. *See, e.g.*, **Lombardi**, 138 F.3d at 561. In this regard, McDowell maintains no evidence shows he knew about, much less intended, using the United States mails to deliver that material. In the light of there being no such direct evidence, the Government counters that a series of inferences prove McDowell knew the mails would be used.

As reflected by its inconsistent answers at oral argument here, the Government is not clear whether it contends aiding-and-abetting liability would attach if McDowell simply knew about Conquernet's alleged scheme of using the United States mails, or whether it was required to show he was aware the mails were used for the specific video at issue. We need not reach this issue because, even under the narrow, applicable manifest-miscarriage-of-justice standard of review, the evidence is insufficient for either basis.

First, the Government contends the jury could have inferred McDowell knew the mails were used because Conquernet is a small company, in whose activities and profits McDowell shared. For example, McDowell had previously duplicated videos and filled orders for the company; and, Bamcom, McDowell's company, served as the billing contact for the website.

10

Second, the Government relies on McDowell's being present when Canadian officials confiscated obscene material from Gartman. That material was identical to the "Torture Video 23" mailed approximately five months later to the undercover Postal Inspector.

Third, the Government asserts Conquernet had a pattern and practice of using the United States mails to deliver movies. *See* *United States v. Gonzales*, 866 F.2d 781, 784 (5th Cir. 1989) ("Because some of his subordinates ... used [a] practice, the jury might have reasonably inferred that [the defendant] encouraged this practice."). Because McDowell also filled orders for the company, the Government asserts the jury could have inferred that he also used the United States mails to do so.

Fourth, and finally, the Government maintains the jury reasonably could have inferred McDowell knew the United States mails would be used to deliver Conquernet's obscene material because Santilena was not the only person with access to the email address responding to the undercover Postal Inspector's inquiries. Gartman also had access. Additionally, the emails were signed "Webmaster", not Santilena. Therefore, according to the Government, a jury reasonably could have inferred that, although Santilena mailed the replacement copies of the videos to the undercover Postal Inspector, he would not have done so without the approval (or at least knowledge) of Gartman and McDowell.

11

Needless to say, to demonstrate sufficiency, the Government "must do more than pile inference upon inference". *United States v. Maseratti*, 1 F.3d 330, 337 (5th Cir. 1993). Taking the Government's offered inferences in turn, they demonstrate the conviction is a manifest miscarriage of justice.

First, Conquernet's small size does not reasonably imply McDowell knew Santilena would mail the videos at issue, especially when such conduct contravened the company's stated practice of shipping UPS. *See*, *e.g.*, *Grimes v. United States*, 379 F.2d 791 (5th Cir. 1967) (holding evidence insufficient for aiding and abetting when defendant was involved in, and received proceeds from, a four-person gambling operation, but did not know it was being conducted interstate).

Second, McDowell's presence in a separate vehicle at the Canadian border, when identical obscene material was confiscated from Gartman, says nothing of McDowell's awareness concerning the mailing of such material by Santilena approximately five months later. *Compare* *Lombardi*, 138 F.3d at 561 (evidence of participation in broader criminal scheme insufficient to create aiding-and-abetting liablity; defendant "must have aided and abetted the specific crime and not just the overall scheme"), *with* *Fischel*, 686 F.2d at 1088-89 (upholding aiding-and-abetting conviction when defendant shared possession of cocaine and

12

specifically urged undercover officer to purchase cocaine from principal accomplice).

Third, the Government's claiming Conquernet had a prior pattern or practice of using the United States mails to deliver its obscene videos does not withstand record review.  Nearly all of the Government's record citations offered in support of this contention refer to different witnesses' testimony concerning the same thing – the specific mailing of the video at issue in this case.  Further complicating matters, the Government used the term "mail" loosely in questioning witnesses, making it unclear whether they intended to say the United States mails, specifically, were used, or, more generically, any similar method of shipment.  Most importantly, none of the evidence shows McDowell was involved with, or had knowledge of, such a purported pattern or practice of using the United States mails.  An example from the Government's brief illustrates the tenuousness of its contention:

> Morse testified that McDowell also "fill[ed]" orders; if Morse "fill[ed]" orders by sending them through the U.S. mails, and Morse described McDowell's role as also "fill[ing]" orders, the jury could reasonably have inferred that McDowell sent orders through the mail and knew that orders would be sent through the mail in the future.

This is a classic example of the above-condemned "pil[ing] inference upon inference", which we repeatedly have held patently insufficient. *E.g.*, *Maseratti*, 1 F.3d at 337.

13

Further, even if there was such a prior pattern or practice, this court has rejected the contention that a defendant in a criminal scheme may be constructively imputed with knowledge of his accomplice's acts. *See* **Lombardi**, 138 F.3d at 562. We have repeatedly emphasized that aiding-and-abetting liability requires knowledge of all elements of the underlying crime. *E.g.*, **Longoria**, 569 F.2d at 425. For example,

> in a prosecution for aiding and abetting armed bank robbery, the government must establish not only that the defendant knew that a bank was to be robbed and became associated with and participated in that crime, but also that the defendant "knew that [the principal] was armed and intended to use the weapon, and intended to aid him in that respect".

**Id.** (quoting **United States v. Short**, 493 F.2d 1170, 1172 (9th Cir. 1974)). *Compare* **id.** *with* **Cowart**, 595 F.2d at 1035 (evidence of knowledge sufficient to uphold aiding-and-abetting wire-fraud conviction when accomplices were required to notify defendant of potential impediments to wire-fraud crime), *and with* **Nye & Nissen**, 336 U.S. at 619 (although there was "no direct evidence tying [defendant] to the [fraud,] ... there [was] circumstantial evidence wholly adequate to [show] ... that the makers of the false [documents] were [defendant's] subordinates, that his family was the chief owner of the business, that he was the manager of it, that his chief subordinates were his brothers-in-law, [and] that he had charge of the office where the [documents] were made out").

For the conviction under 18 U.S.C. § 1461, the Government was required, but failed, to show McDowell not only knew Conquernet was selling obscene material, but also that the material was being delivered through the United States mails. *Longoria*, 569 F.2d at 425. Unlike *Nye & Nissen*, nothing in the record demonstrates Santilena was McDowell's subordinate, or that McDowell was notified of, or otherwise knew about, Santilena's use of the mails to deliver the obscene material. 336 U.S. at 619.

Fourth, *Gartman*'s having access to Santilena's email account (used to respond to the undercover Postal Inspector's inquiries) does not lead to a reasonable inference that *McDowell* also had such access. Moreover, even if the Government had shown McDowell had access to Santilena's email account (which, again, it did not), that access alone would *not* have been sufficient to show McDowell knew about, or condoned, the emails to, and concomitant use of the mail for, the undercover Postal Inspector. *See Smith*, 546 F.2d at 1285 (defendant's access to fraudulent bank account insufficient to demonstrate aiding-and-abetting criminal intent for her alleged accomplice's crime of depositing counterfeit cashier's check).

## III.

For the foregoing reasons, the judgment is **VACATED** and the mandate shall issue forthwith.

15