# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 14, 2011

No. 09-60566

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

KEITH MORELAND

Defendant-Appellant

Appeal from the United States District Court
for the Northern District of Mississippi

Before JOLLY, DeMOSS, and DENNIS, Circuit Judges.

DENNIS, Circuit Judge:

The defendant-appellant, Keith Moreland ("Keith"), was convicted by a jury of knowing possession of child pornography, 18 U.S.C. § 2252A(a)(5)(B) (2006), sentenced to 51 months imprisonment and five years of supervision after release, and ordered to register as a sex offender. At trial, the prosecutor introduced 112 digital images of alleged child pornography that a Columbus, Mississippi city police officer found in two home computers that Keith and his wife, Deanna, owned and kept in their house in Columbus. Because Keith's father, George Moreland ("George"), was terminally ill and required assisted living, he resided with Keith and Deanna off and on during 2007 and until his death in January 2008. The police obtained possession of the Morelands' two

No. 09-60566

computers on September 28, 2007. During several months prior to September 28, 2007, the two computers had been subject to joint custody, control, and use by Keith, Deanna, and George.  George, who slept in the living room, frequently used the computers late at night when Keith and Deanna were asleep and during the day while Keith was at work. George, Keith, and Deanna each had access to and free use and control of Keith's username, password, and Yahoo! account on the computers. The police never interviewed or investigated George about his use of the computers or pornography. George died in January 2008. Subsequently, Keith was indicted in May 2008 with knowing possession of child pornography. He was tried and convicted of that charge by a jury in 2009.

Keith appeals his conviction. He argues that the evidence was insufficient to rationally support a jury in finding beyond a reasonable doubt that he, rather than George or another person, knowingly possessed the 112 images found on the two computers. After viewing all of the evidence in the light most favorable to the guilty verdict, we conclude that no reasonable jury could find beyond a reasonable doubt that Keith had (1) knowledge that the 112 images were in the computers; or (2) possession of the images, that is, the power and ability to access and exercise dominion or control over them. Thus, we are required to reverse the district court's judgment of conviction.

## I. Background of Law and Computer Technology

The "exploitive use of children in the production of pornography has become a serious national problem." *New York v. Ferber*, 458 U.S. 747, 749 (1982). In *Ferber*, the Supreme Court held that child pornography is distinguishable from other sexually explicit speech. Child pornography is not

No. 09-60566

protected by the First Amendment because the State has a "compelling" interest in safeguarding the well-being of minors. *Id.* at 756-57. "The prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance." *Id.* at 757; *see also Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 239 (2002). Therefore, while pornography may warrant First Amendment protection and can be banned only if it is found to be obscene, *see Miller v. California*, 413 U.S. 15 (1973), pornography that depicts minors can be proscribed whether or not the images are obscene. *Ashcroft*, 535 U.S. at 240. Moreover, the Court has held that the State's interest in protecting children from exploitation also justifies criminalizing the possession of pornography that is produced using children. *Osborne v. Ohio*, 495 U.S. 103, 110-11 (1990); *see also Ashcroft*, 535 U.S. at 250 (affirming *Osborne* while striking down a statutory provision that outlawed possession of virtual child pornography because real children were not exploited in its production). "The freedom of speech has its limits; it does not embrace certain categories of speech, including defamation, incitement, obscenity, and pornography produced with real children." *Ashcroft*, 535 U.S. at 246.

The state's power to criminalize child pornography and to prosecute individuals for possession of child pornography is not unlimited. *See Ferber*, 458 U.S. at 764 (noting that "[t]here are . . . limits on the category of child pornography which . . . is unprotected by the First Amendment"). "As with obscenity laws, criminal responsibility [for child pornography] may not be imposed without some element of scienter on the part of the defendant." *Id.* at 765.

No. 09-60566

Keith was convicted of the knowing possession of child pornography in violation of the federal Protection of Children Against Sexual Exploitation Act, 18 U.S.C. § 2252A(a)(5)(B) (2006). At the time that he was charged, the statutory provision prohibited, in pertinent part, "knowingly possess[ing] . . . any . . . material that contains an image of child pornography that has been . . . transported . . . in . . . interstate or foreign commerce by any means, including by computer." *Id.* Child pornography is defined therein as "any visual depiction . . . involv[ing] the use of a minor engaging in sexually explicit conduct; . . . or . . . [any] visual depiction [that] has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct." 18 U.S.C. § 2256(8). Thus, to secure Keith's conviction, the government had to prove beyond a reasonable doubt that Keith knowingly possessed digital visual images of real children engaging in sexually explicit conduct. The term "knowingly" extends both to the age of the performers and the sexually explicit nature of the material. *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 78 (1994).

Although the Supreme Court upheld a prohibition against both possessing and viewing child pornography, *see Osborne*, 495 U.S. 103, at the time of Keith's offense, the federal statute and the majority of state statutes criminalized "knowing possession," but not mere "viewing," of child pornography.[1] The term

---

[1] In 2008, the federal statute was amended to also criminalize "knowingly access[ing child pornography] with intent to view." Protection of Children Against Sexual Exploitation Act, 18 U.S.C. § 2252A(a)(5)(B) (2006). The majority of states do not criminalize viewing child pornography. *See, e.g.*, Fla. Stat. § 827.071(4)-(6) (2010); La. Rev. Stat. Ann. § 14:81.1 (2006); Miss. Code Ann. § 97-5-33 (2003); Tex. Penal Code Ann. § 43.26 (West 2011). Some states criminalize possession or control of child pornography. *See, e.g.*, Colo. Rev. Stat. § 18-6-403 (2009). A small minority of states criminalize viewing child pornography. *See* Alaska Stat. § 11.61.123 (2009); Ark. Code Ann. § 5-27-602 (2010); N.J. Stat. Ann. § 2C:24-4 (2010); Ohio Rev. Code Ann. § 2907.323 (West 2010); 18 Pa. Cons. Stat. § 6312(d) (2009). The federal statute also criminalizes knowing receipt of child pornography, *see* 18 U.S.C. § 2252A(a)(2)

4

No. 09-60566

"knowingly possess" is not defined in the statute. "[I]n interpreting the term, [federal courts] are guided by its ordinary, everyday meaning." *United States v. Tucker*, 305 F.3d 1193, 1204 (10th Cir. 2002); *see also United States v. Hildenbrand*, 527 F.3d 466, 476 (5th Cir. 2008) ("Absent a statutory definition or definitive clue, the meaning [of a statutory term] must be given its ordinary, 'everyday meaning.'" (citation omitted)); *United States v. Dobbs*, 629 F.3d 1199 (10th Cir. 2011) (using ordinary meaning to analyze the term "receives" under a related statute, 18 U.S.C. § 2252(a)(2)). Possession is defined as "the holding or having something (material or immaterial) as one's own, or in one's control." Oxford English Dictionary (2d ed. 1989); *see also United States v. Simpson*, 94 F.3d 1373, 1380 (10th Cir. 1996) (defining "knowing possession" in the drug context as encompassing situations in which an individual "knowingly hold[s] the power and ability to exercise dominion or control" over the narcotics (quotation omitted)); Webster's New Collegiate Dictionary (11th ed. 2008) (defining "possession" as "the act of having or taking into control").

Child pornography can be distributed digitally over the internet and personal computers. As child pornographers have become more tech savvy, so have law enforcement officers and prosecutors. With the assistance of forensic software, a skilled investigator can recover data from a computer that the user thought was deleted or never even knew existed. In order for investigators, prosecutors, and courts to properly analyze such evidence in the context of a criminal prosecution for the knowing possession of child pornography, they must have a basic understanding of how individual computers and the internet interrelate and work. The major parts of a computer that come into play in a

---

(2006). Keith was not charged with this offense.

No. 09-60566

typical case are its cache, its temporary internet files, and its unallocated slack space.[2]

When a computer user views a webpage, the computer automatically stores a copy of that webpage in a folder known as the cache. Ty E. Howard, *Don't Cache Out Your Case: Child Pornography Possession Laws Based on Images Located in Temporary Internet Files*, 19 Berkeley Tech. L.J. 1227, 1229-30 (2004). The copy is retained in a file called a temporary internet file. When the user revisits that webpage, the computer can load the page more quickly by retrieving the version stored in the cache. *Id.* at 1230. The computer automatically deletes temporary internet files when the cache — which has limited storage space — becomes full. Once full, the computer begins to delete the files on a "first in, first out" basis. Note, *Child Pornography, The Internet, and the Challenge of Updating Statutory Terms*, 122 Harv. L. Rev. 2206, 2212 (2009). Users also may manually delete files from the cache, or use commercial software to remove the files. *Id.*

Deleted files are not wholly removed from the computer. A deleted file is marked as unallocated file space, which allows that file to be overwritten by new files. *See* Michele C.S. Lange & Kristin M. Nimsger, Electronic Evidence and Discovery: What Every Lawyer Should Know *Now* 208-09, 235-36 (2d ed. 2009). A computer's deleted files make up what is known, in this case, as the disk slack space. A knowledgeable forensic investigator may use forensic software to search

---

[2] Files found in the disk slack space are sometimes called "orphan files," as it is difficult or impossible to trace their origin or date of download. *See United States v. Kain*, 589 F.3d 945, 948 (8th Cir. 2009) ("Orphan files are files that were on the computer somewhere saved but were subsequently deleted, so the computer doesn't know exactly where they came from." (internal quotation marks omitted)).

6

No. 09-60566

for, recall, and view the contents of the unallocated file space. This process is known as "restoring" a deleted, but not yet overwritten, file. It requires sophisticated expertise and special software to restore a deleted file. *See, e.g.*, *id.* at 78, 231, 235-36 & fig. 5.8; Howard, *supra*, at 1234 n.22 (citing Joan E. Feldman, The Basics of Computer Forensics, 12 Practical Litig. 17, 19-20 (2001); and Richard Hardy & Susan Kreston, *"Computers are like Filing Cabinets . . .": Using Analogy to Explain Computer Forensics*, 15 Nat'l Ctr. for Prosecution of Child Abuse Update Newsl. No. 9 (Nat'l Dist. Attorneys Ass'n, Alexandria, Va.), 2002).

Investigators may also utilize index.dat files in prosecuting child pornography cases. The index.dat file is a record of all visited websites, as well as the date and time that the site was last visited. Howard, *supra*, at 1235 n.26.

## II. Factual Background

### A.

Keith Moreland lived in a house in Columbus, Mississippi with his wife Deanna and their three children. In 2007, George Moreland, Keith's father, who was dying of cancer, stayed at Keith and Deanna's house for several months, off and on, sleeping on the living room couch. There were two computers in the house: a desktop, located in the living room, and a laptop. Keith, Deanna, and George each had free access to and consistently used both computers. According to Deanna, George regularly used both computers, including late at night and at other times when Keith and Deanna were absent or not in the living room.

On September 28, 2007, Deanna was using the desktop computer and noticed a URL (an internet address) in the web browser's history which

7

contained the words "Teen Topanga." She testified that she clicked on it and found what appeared to be a pornographic website, where she saw pictures of "girls" who "appeared to be underage" and were "dressed, you know, very provocative" but were not nude. Deanna then found the same URL in the web browser history on the laptop computer as well.

Deanna was upset and called Keith, who was at work, to tell him what she had found.  Keith was a supervisor at a company called American Eurocopter, where he regularly worked 10-to-12-hour days and was "responsible for the planning and outlay of work programs throughout the day," and had "about 14 to 16" employees working under him. According to Deanna, Keith "didn't really seem alarmed at all" and "said, well, you know, I haven't looked at anything like that. I don't know how it got there. We'll talk about it when I get home." Keith worked late that day, as he often did.

After speaking with Keith, Deanna called the sheriff's department. She testified that a friend of hers had suggested that she call the police. The deputy who came to the house asked Deanna to turn the two computers over to the police, and she did so. She also decided to pack a few things and take the children to her parents' house, because she expected to have a heated argument with Keith when he came home from work, and did not like to argue in front of the children. Deanna later testified that she was "concerned about what Keith's position would be with regards to his father."  When Keith returned home from work, Deanna and the children had gone to her parents' house. The following morning, Keith went to compete in a bass fishing tournament with a friend. While he was at the tournament, he received another phone call from Deanna, at which point he walked back home.

No. 09-60566

In January 2008, Keith's father, George, died. Subsequently, on May 27, 2008, Keith was charged with possessing child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) (2006).[3]

## B.

The trial took place on January 6 and 7, 2009. At trial, the government introduced and displayed to the jury slide photos of 112 digital images that had been taken from the hard drives of the Moreland household's two computers. The jury was given only 3 to 5 seconds to view each of these images. At the time the images were shown, the jury had not been given any instruction as to the legal definition of child pornography. After the jurors were later instructed, they did not again view the images or expressly determine which images were child pornography.

---

[3] At the time the defendant was charged, this statutory provision, in pertinent parts, prohibited "knowingly possess[ing] . . . any . . . material that contains an image of child pornography that has been . . . transported . . . in . . . interstate or foreign commerce, by any means, including by computer." 18 U.S.C. § 2252A(a)(5)(B) (2006). The government, though it introduced evidence showing that the computers themselves were manufactured in a foreign country, did not introduce any evidence at trial that the 112 digital images found on the Morelands' two home computers had been transported in interstate or foreign commerce. One federal court of appeals has held that a defendant's mere connection to the Internet does not satisfy the requirement of proof that the files or images in question were actually transported in foreign or interstate commerce. *United States v. Flyer*, 633 F.3d 911, 918 (9th Cir. 2011) (citing *United States v. Wright*, 625 F.3d 583, 595 (9th Cir. 2010)). However, the defendant did not raise the insufficiency of evidence on this essential element of the crime below or present argument on it on appeal. The commerce clause nexus element in the statute is not "jurisdictional" in the sense that a failure of proof would divest the federal courts of adjudicatory power over the case. *See United States v. Ternus*, 598 F.3d 1251, 1254 (11th Cir. 2010); *see also United States v. Sealed Appellant*, 526 F.3d 241, 243 & n.4 (5th Cir. 2008) (quoting *United States v. Martin*, 147 F.3d 529, 531-32 (7th Cir. 1998)); *United States v. Lasaga*, 328 F.3d 61, 63-64 (2d Cir. 2003); *United States v. Robinson*, 119 F.3d 1205, 1212 n.4 (5th Cir. 1997). Therefore, we do not consider or decide this issue; nor is it necessary to our disposition of this appeal.

No. 09-60566

The government relied upon Matthew Manley, a Columbus, Mississippi police officer, to examine the Morelands' two home computers and testify as to his findings. He was not offered, qualified, or accepted as an expert in child pornography or in forensic computer technology. He testified that he had received 160 hours in computer training and was serving as a computer investigator for the city police department. Manley said that he could only testify as to the facts of what he found on the Morelands' two computers. Because of the lack of information in the computers, Manley said he could not testify as to where the images had come from, when they were received or deleted, or who was operating the computer at those times; also, he testified that he could not express an opinion as to whether any particular image was child pornography.

Manley testified that he performed a forensic examination of the computers using software called Forensic Toolkit (FTK). He used FTK to process the data on the computers' hard drives, and to look for and recover deleted files. He recovered "tens of thousands of images," and flagged only those that he thought might possibly contain child pornography. The prosecutor then selected the 112 images to present to the jury and place into evidence. Because a computer does not save the source or date of a file when the file is deleted, Manley was unable to recover information pertaining to where the images had come from or when they entered the computer. He also testified that he was unable to recover data showing when the images had been deleted. He testified that "[t]he majority of the [images] that were found on both computers were found in the disk slack space. They had been deleted and, you know, were not able to be fully recovered as far as date, time stamps, and things like that to know when they were deleted, but the images were able to be recovered." He

No. 09-60566

later indicated that a few images had come from other places in the computers, but he did not explain which ones those were or where he had found them. Manley also testified that deleted files can continue to exist on a computer's hard drive and be recovered: "When [a person] . . . hit[s] the delete button . . . that file just isn't immediately scrubbed from [the] hard drive. The way Windows and most operating systems work is, it just goes in there and delete the first string of code, which is known as the header, which tells Windows, I now have that space free in there. It doesn't mean that it's automatically deleted off of the computer. It's just available for that space." Thus, Manley testified that he had recovered most of the 112 digital images that the government introduced at trial from the computers' unallocated slack spaces, indicating that they had been deleted but had not yet been overwritten, and therefore could be recovered.

Manley also testified in respect to the computers' index.dat files, which reflected the computers' internet browsing history. Manley explained that an index.dat file "basically makes a bread crumb trail of where you've been and what sites you've been to and the last time you were there." Approximately twenty index.dat files on the laptop were considered to have evidentiary value; together, the files contained "thousands of pages of listings." He did not testify about how far back in time the index.dat files went, what date ranges were contained in the twenty index.dat files that were found to have evidentiary value, or how many files were not entered into evidence. Manley initially stated that, on print-outs of the index.dat files, he "highlighted in pink every web site that was visited that was pornographic," but later clarified that he limited his pink highlighting to "web sites that are still up that were of teen in nature pornography sites," and furthermore noted that he highlighted websites that he

11

guessed might be pornographic based on the title, but could not verify that they contained illegal child pornography.[4] The government did not introduce into evidence any images from these websites. Manley admitted on cross-examination that some such websites advertise themselves suggestively as underage sexually explicit websites by their names and other features, but, ultimately when they are inspected, they turn out not to be unlawful child pornography websites but legal adult pornography websites.

Manley found usage patterns showing that a user of the computers had visited a website that might have contained child pornography shortly after or shortly before visiting the Yahoo! website where the user checked email or played dominoes. As Manley acknowledged, however, this evidence did not indicate who actually visited those sites. Keith was not the only person who used the computers prior to Manley's inspection of them sometime in October 2007. For several months prior to September 28, 2007, Keith's father, George, lived in the Morelands' living room and used the family's computers often and as he pleased. On cross-examination, Manley testified that the data revealed that the suspected pornographic websites were visited by someone using the computers in 2007. Thus, as he admitted, Manley could not identify whether it was George, Deanna, Keith, or another person who was using the computers when the usage patterns occurred. Specifically, Manley acknowledged that anyone who knew Keith's password could log on to the computers and use Keith's accounts on

---

[4] The federal statutory definition of child pornography, as relevant here, requires a depiction of "a minor engaging in sexually explicit conduct." 18 U.S.C. § 2256(8). A minor is "any person under the age of eighteen years." 18 U.S.C. § 2256(1). "Teen pornography" is not defined by law and may involve eighteen- or nineteen-year-old teenagers, which is adult pornography that is not illegal unless it is obscene. *See id.*

No. 09-60566

them; and that if Keith logged on to one of the computers, put his password in and got up and left it on, subsequently another person could come and use that computer in Keith's name and account.

Manley testified that the laptop computer had only one user account, which "had the user name of Keith Moreland." The desktop computer had three user accounts, in the names of Keith, Deanna, and their son. George did not have a separate user account on either computer. According to Deanna, Keith "was always logged on" from both computers to his Yahoo! account on the internet. Therefore, she testified, she did not need a password to access his account, and that she used his Yahoo! email account to check and send email. Manley confirmed that if someone remained logged on to their account, anyone using that computer could access the account, and that he could not testify as to who actually was using the computer at any given time. Deanna further explained that because their household had cable wireless internet, rather than dial-up, the computers were always logged into the internet, and that Keith was always logged in to his Yahoo! account. She also testified that Keith "has the same password for everything," and that she knew the password.

Deanna testified that she had not looked at child pornography on the computers and that she had never seen anyone in her home looking at any kind of pornography. Keith also testified that he had not looked at child pornography on the computers. According to Deanna and Keith's uncontradicted testimony at trial, George often used both computers in the Moreland household while he was staying at their house. Deanna testified that it was "not uncommon" for George to use the computers at night when the rest of the family went to bed. According to Keith, "My father always logged in under my name. My name was

always up [on the computers], and that's what he used. . . . [George] didn't have an account on my computer. He did everything in my name." Deanna further testified that George "was a character that I was very suspicious of," explaining that George "was definitely into pornography. He would readily admit it to anybody that would listen. I always felt he had a guilty conscience, because he would just put it out there, and it was a little awkward. So that was common knowledge. Everybody that knew the man knew that." She also testified that she told the police that she suspected her father-in-law when she spoke with them a second time, but that the police did not give her "much of an opportunity to say anything."

Eric Moreland, Keith's brother and George's son, corroborated Deanna's and Keith's testimony about George. Eric lived with his wife, Kayla, next door to George's house in Gatman, Mississippi. He testified that he had known "for a long time" that George "had an issue with viewing adult material." Eric testified that after George learned that Keith's computers were being investigated for child pornography, George "contacted me and asked me to bring his computers to him at the residence he was staying and proceeded to ask me to destroy it, to take the hard drive out of the machine and get rid of it." According to Eric, "I told [George] I wasn't actually going to do that, but I would take it apart and let him destroy it hisself. As far as I know, he destroyed it. I have no idea where it's at at this point. I just assumed that he got rid of it." Kayla, Eric's wife, also testified that "right after all of this came up" – referring to the police's investigation of Keith's and Deanna's computers – George called Eric and asked Eric to pick up George's computer from George's house and bring it to George's current residence. She stated that Eric brought George his

computer, and then George "had something done with it." Eric and Kayla both testified that after George died, they cleaned out George's house and found a large amount of pornographic material, including magazines and videotapes.

With regard to this testimony concerning George's obsession with pornography and his destruction of his own computer, the prosecution attempted to discredit the testimony of Keith, Deanna, Eric, and Kayla on cross-examination. The prosecution challenged the four witnesses for not informing the police of George's conduct. The law enforcement officers who testified at trial acknowledged that Deanna had mentioned George to them in connection with their investigation, but denied that she ever specifically informed them that George had access to the computers. The record does not indicate that the police ever interviewed George or investigated him in connection with his use of the computers or with the 112 photographic images found on the two computers in the Moreland household.

The prosecutor attempted to discredit and show the partiality of Deanna, Eric, and Kayla through his examination of Deanna — who appeared as both a government and defense witness — and his cross-examination of the other Moreland family members. Beyond this, however, the government did not present any affirmative evidence that called into question those witnesses' testimony, including their description of George's affinity for pornography and his actions to destroy his own computer's hard drive after the police obtained custody of Keith's and Deanna's home computers. Moreover, the prosecutor introduced no evidence to dispute Keith's and Deanna's testimony that she and George had used Keith's password and accounts continually to operate the two home computers. For instance, the government introduced no evidence to show

No. 09-60566

that George had his own separate Yahoo! account that he had used while staying at Keith and Deanna's house; or to show that the computers were ever used by Deanna or George to access any Yahoo! account other than Keith's. Thus, the undisputed evidence of record establishes that at least three adults, Keith, Deanna, and George, had access to the Morelands' home computers and had access to Keith's Yahoo! account prior to September 28, 2007 when Deanna turned the computers over to the police.

### III. Analysis
### A. Standard of Review

Keith argues that the evidence was constitutionally insufficient to carry the government's burden of proof beyond a reasonable doubt as to two essential elements of the crime[5]: first, that the evidence was insufficient to support a finding beyond a reasonable doubt that Keith, rather than George or another person, possessed the images that are the basis of the conviction; and second, that the evidence was insufficient to support a finding beyond a reasonable doubt that whoever possessed the images had actual knowledge that they were child pornography. Because Keith properly preserved his argument regarding the insufficiency of the evidence as to his knowing possession of child

---

[5] We do not address, inter alia, the defendant's argument that Manley gave expert testimony about how computers work without being tendered or qualified as an expert, making his testimony on that subject inadmissible under Fed. R. Evid. 701(c). *See United States v. Garcia*, 413 F.3d 201, 215 (2d Cir. 2005). Nor do we address the argument that the prosecutor deprived the defendant of due process by commenting at trial on his exercising his right to remain silent after his arrest. *See United States v. Laury*, 985 F.2d 1293, 1304 (5th Cir. 1993). We also do not address Keith's argument that the prosecution failed to prove that the 112 digital images are actual child pornography and not depictions of youthful-looking adults or virtual or artificial minor child images.

pornography by moving for a judgment of acquittal after the close of all the evidence, this court's review is de novo. *See United States v. Williams*, 602 F.3d 313, 314-15 (5th Cir.), *cert. denied*, 131 S. Ct. 597 (2010). We conclude that the evidence was insufficient to support a finding beyond a reasonable doubt that Keith knowingly possessed the images in the computers because the evidence does not sufficiently demonstrate that a rational jury could find beyond a reasonable doubt that Keith had knowledge that the images were in the computers or that Keith had the requisite knowledge and ability to access them and to exercise dominion or control over them.

### B. Due Process Requirements

Keith argues that his conviction violated the Due Process Clause of the Fourteenth Amendment, which forbids conviction "'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which [the defendant] is charged.'" *Jackson v. Virginia*, 443 U.S. 307, 315 (1979) (quoting *In re Winship*, 397 U.S. 358, 364 (1970)). This requirement "provides concrete substance for the presumption of innocence — that bedrock 'axiomatic and elementary' principle whose 'enforcement lies at the foundation of the administration of our criminal law.'" *Winship*, 397 U.S. at 363 (quoting *Coffin v. United States*, 156 U.S. 432, 453 (1895)).

Despite the importance of this constitutional principle, judges must be highly deferential to the jury's verdict of conviction: courts "view[] the evidence in the light most favorable to the prosecution." *Jackson*, 443 U.S. at 319; *see also United States v. McNealy*, 625 F.3d 858, 870 (5th Cir. 2010) (citing *United States*

No. 09-60566

*v. Harris*, 293 F.3d 863, 869 (5th Cir. 2002)).[6] Here, "[i]n deciding whether the evidence was sufficient, we review all evidence in the light most favorable to the verdict to determine whether a rational trier of fact could have found that the evidence established the essential elements of the offense beyond a reasonable doubt." *United States v. Shum*, 496 F.3d 390, 391 (5th Cir. 2007).

That said, in viewing the evidence in the light most favorable to the prosecution, we "consider the countervailing evidence as well as the evidence that supports the verdict in assessing sufficiency of the evidence." *United States v. Brown*, 186 F.3d 661, 664 (5th Cir. 1999) (internal quotation marks omitted). We also will draw upon only "reasonable inferences from the evidence to support the verdict." *United States v. Percel*, 553 F.3d 903, 910 (5th Cir. 2008) (quoting *United States v. McDowell*, 498 F.3d 308, 312 (5th Cir. 2007)) (internal quotation marks omitted). "[A] verdict may not rest on mere suspicion, speculation, or conjecture, or on an overly attenuated piling of inference on inference." *United States v. Rojas Alvarez*, 451 F.3d 320, 333 (5th Cir. 2006) (alteration in original) (quoting *United States v. Pettigrew*, 77 F.3d 1500, 1521 (5th Cir. 1996)) (internal quotation marks omitted); *see also United States v. D'Amato*, 39 F.3d 1249, 1256 (2d Cir. 1994) ("[A] conviction based on speculation and surmise alone cannot

---

[6] As the Supreme Court recognized in *Jackson v. Virginia*, "[A] properly instructed jury may occasionally convict even when it can be said that no rational trier of fact could find guilt beyond a reasonable doubt . . . . In a federal trial, such an occurrence has traditionally been deemed to require reversal of conviction." 443 U.S. at 317. We remain highly deferential to jury verdicts, but are obligated, as judges, to reverse a conviction where, having viewed all evidence in the light most favorable to the prosecution, we must conclude that the record cannot support a conclusion that the prosecution established guilt beyond reasonable doubt. *Id.* at 318-19; *United States v. Ragan*, 24 F.3d 657, 659 (5th Cir. 1994) ("Although the strict nature of this standard demonstrates our reluctance to interfere with jury verdicts, this case is an example of why courts of appeal must not completely abdicate responsibility for reviewing jury verdicts.").

stand."). Courts cannot "credit inferences within the realm of possibility when those inferences are unreasonable," *United States v. Quattrone*, 441 F.3d 153, 169 (2d Cir. 2006). In keeping with this standard, we have held that no reasonable jury could convict a defendant where the government has done nothing "more than pile inference upon inference" to prove guilt. *McDowell*, 498 F.3d at 314; *United States v. Maseratti*, 1 F.3d 330, 337 (5th Cir. 1993); *see also United States v. Sandlin*, 589 F.3d 749, 757-58 (5th Cir. 2009) (reversing a defendant's sentencing enhancement because it found that the evidence for enhancement was supported by "nothing beyond speculation"). The government must do more to support a conviction. *McDowell*, 498 F.3d at 314. We also have held that no reasonable jury could find a defendant guilty of an offense where the "evidence gives equal or nearly equal circumstantial support to a theory of guilt, as well as to a theory of innocence." *United States v. Ferguson*, 211 F.3d 878, 882-83 (5th Cir. 2000); *United States v. Jaramillo*, 42 F.3d 920, 923 (5th Cir. 1995). Convictions based on such evidence must be reversed. *Ferguson*, 211 F.3d at 882-83. This standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by law. *Jackson*, 443 U.S. at 324 n.16.

## C. Sufficiency of the Evidence

### 1. Joint Custody vs. Constructive Possession

In order to obtain a conviction under 18 U.S.C. § 2252A(a)(5)(B) (2006), the government must prove beyond a reasonable doubt that Keith knowingly possessed material that contained an image of child pornography that had been transported in interstate or foreign commerce by any means, including by computer. Keith contends that the evidence was insufficient to prove beyond a

No. 09-60566

reasonable doubt that he possessed any such image of child pornography or that he did so knowingly.

Possession may be either actual or constructive. *United States v. Mergerson*, 4 F.3d 337, 348 (5th Cir. 1993); *United States v. McKnight*, 953 F.2d 898, 901 (5th Cir. 1992). "Actual possession means the defendant knowingly has direct physical control over a thing at a given time." *United States v. Munoz*, 150 F.3d 401, 416 (5th Cir. 1998). "Constructive possession is the ownership, dominion or control over an illegal item itself or dominion or control over the premises in which the item is found." *United States v. De Leon*, 170 F.3d 494, 496 (5th Cir. 1999). Because there was no evidence that Keith had direct physical control of any of the 112 digital images in the computers, the prosecution tried this case as a "constructive possession" case.

The government may prove constructive possession by circumstantial evidence. *Id.*; *United States v. Jones*, 133 F.3d 358, 362 (5th Cir. 1998). Dominion, control, and knowledge, in most cases, may be inferred if a defendant had exclusive possession of the place in which the contraband is found, but this inference cannot be sustained if the defendant shared joint occupancy of the place. *United States v. Crain*, 33 F.3d 480, 486 (5th Cir. 1994); *Mergerson*, 4 F.3d at 349. "[W]here . . . a residence is jointly occupied, the mere fact that contraband is discovered at the residence will not, without more, provide evidence sufficient to support a conviction based upon constructive possession against any of the occupants." *Mergerson*, 4 F.3d at 349 (second alteration in original) (internal quotation marks omitted); *accord United States v. Mills*, 29 F.3d 545, 549 (10th Cir. 1994); *United States v. Ford*, 993 F.2d 249, 252 (D.C. Cir. 1993); *United States v. Sullivan*, 919 F.2d 1403, 1431 (10th Cir. 1990);

*United States v. Reese*, 775 F.2d 1066, 1073 (9th Cir. 1985). When the government seeks to prove constructive possession of contraband found in a jointly occupied location, it must present additional evidence of the defendant's knowing dominion or control of the contraband, besides the mere joint occupancy of the premises, in order to prove the defendant's constructive possession. *Mergerson*, 4 F.3d at 349. A conviction based upon constructive possession will be upheld only where the prosecution has proven that there is "something else (e.g., some circumstantial indicium of possession) . . . besides mere joint occupancy" that "support[s] at least a plausible inference that the defendant had knowledge of and access to the . . . contraband." *Id.*

Based on our review of the evidence in the light most favorable to the guilty verdict, we conclude that there was not sufficient evidence for a rational jury to find beyond a reasonable doubt that Keith knowingly and constructively had possession of the 112 digital images found in the computers' slack space. Because the government attempted to prove that Keith had constructive possession of the images, and the two computers had been in the joint custody and use by Keith with George and Deanna, the government was required to introduce evidence, in addition to the evidence of mere joint custody, to support a reasonable inference both that Keith knew that the images were in the computers and that Keith had the knowledge and ability to access the images and to exercise dominion or control over them. The evidence—both direct and circumstantial, together with the reasonable inferences to be drawn therefrom—is sufficient if, when taken in the light most favorable to the government, a reasonable jury could find the defendant guilty of all of the essential elements of the crime beyond a reasonable doubt. In this case, however,

No. 09-60566

the government failed to come forward with sufficient proof to justify a rational jury in finding a reasonable inference of Keith's knowledge of, access to, or dominion or control over the 112 digital images in the computer; thus, the evidence is not sufficient to support a reasonable jury in finding that Keith had constructive possession of the images or that he was guilty beyond a reasonable doubt.

The government's arguments to the contrary are not persuasive or meritorious. First, the government argues that Officer Manley's testimony provided additional facts that, when considered with the prosecution's other evidence, formed the basis for a finding beyond a reasonable doubt that Keith knowingly exercised dominion or control over the digital images in the computers' slack space. We disagree for several reasons.

Manley admitted that he could only testify to the data that he found in the computers. He further acknowledged that he could not determine from the data in the computers where the 112 images he found there had come from, when they had entered the computers, or when they had been deleted and redesignated as slack spaces on the computers' hard drives. He also acknowledged that he could not tell from the data in the computers who, i.e., whether Keith, George, Deanna, or another person, was using the computers when the computers received the 112 images; or when the computers deleted the images and redesignated them as unallocated slack spaces on the computers' hard drives; or when the computers visited websites that he suspected of containing child pornography.[7] He did not produce, and the government did not

---

[7] Indeed, Manley highlighted and flagged a portion of the index.dat files that showed that someone other than Keith, who was using Keith's user name, accessed Keith's Yahoo! accounts within minutes of going to a suspected teenage pornographic website at 5:43 p.m. on

22

introduce, any evidence from those websites to prove that they contained child pornography. Thus, Manley was unable to determine whether any of the 112 images found in the computer came from any of the websites that the index.dat files indicated the computers had visited. In sum, Manley did not provide any testimony or evidence from which it could reasonably be inferred that Keith had ever seen the 112 images; knew that they were in the computers; or that Keith had the knowledge and ability to access those images or exercise dominion or control over them.  Manley further testified that he could not express an opinion on whether any particular image found in the computers was child pornography. We do not reach the issue of whether the images met the statutory definition of child pornography, however, because the government failed to introduce sufficient evidence to establish Keith's culpability beyond a reasonable doubt even if the 112 images were child pornography.

Second, the government argues that Keith's statements and conduct after Deanna called him at work on September 28, 2007 to tell him what she had found on the computers provides circumstantial evidence besides the mere joint custody of the computers that furnished the jury with a basis for reasonably

---

September 28, 2007, Coordinated Universal Time, which was 12:43 p.m. local time. Both parties agree that Keith was at work at that date and time and could not have been the home computer operator; instead, it appears most likely that the user of the home computer in that instance was Deanna. Rather than serving as proof that Keith was the computer user who accessed the suggestively named websites, this is evidence that persons other than Keith had access to his Yahoo! accounts and could and did access his account within moments of accessing a lewd website. Evidence from the index.dat files that someone accessed Keith's Yahoo! account around the time that someone accessed suggestively lewd websites does not provide additional facts beyond mere joint custody, from which it could reasonably be inferred that Keith had knowledge of the images or the ability to access them and exercise dominion or control over them, because that evidence does not show that Keith, rather than George or another member of the household, accessed those websites.

23

No. 09-60566

inferring that Keith knew about the 112 images in the computers and that he had the knowledge and ability to access the images and exercise dominion or control over them. The linchpin of the government's argument is its bare assertion or speculation that if Keith had been ignorant of the images in the computers, he would have gone home immediately to inspect the computers and to upbraid his seriously ill father and to throw him out of the house; rather than replying, as he did, by saying he didn't know the images were there because he hadn't looked at anything like that; and that he would look into the matter when he got off work. We do not believe the government's assertion or speculation is reasonable or supports a plausible inference of Keith's knowledge of, access to, or dominion or control over the 112 images. The government does not point to any facts or evidence in the record to support its assertion or speculation that a person's failure to react so drastically and harshly to his dying father under these circumstances is grounds for a reasonable inference of his guilt of knowingly possessing child pornography.

In our previous joint occupancy cases, this court has adopted a "commonsense, fact-specific approach" to determining whether constructive possession was established. *Mergerson*, 4 F.3d at 349 (quoting *United States v. Smith*, 930 F.2d 1081, 1086 (5th Cir. 1991)) (internal quotation marks omitted). We have found constructive possession in such cases only when there was some evidence supporting at least a plausible inference that the defendant had knowledge of and access to the weapon or contraband. *Id.* (citing *McKnight*, 953 F.2d at 902 (upholding conviction where the weapon was found in plain view); and *Smith*, 930 F.2d at 1086 (same)). In the instant case, the digital images were not in plain view, but were in the computers' unallocated slack spaces, which are

24

No. 09-60566

accessible only to a knowledgeable person using special computer software, and there was no circumstantial indicium that established that Keith knew of the images or had the ability to access them.

Thus, we hold that the evidence supporting Keith's conviction of knowing possession of child pornography is constitutionally insufficient.

### 2. Comparison With Exclusive Possession Cases

The proof deficiency here is underscored by a comparison with other federal courts of appeals' decisions holding that, even when the defendant has exclusive possession of his computer, evidence of storage of child pornography images in the hard drive of a defendant's computer, without more, is insufficient to sustain a conviction or sentence for knowing possession or receipt of child pornography; and that in exclusive possession cases in which convictions have been upheld, the government has presented additional evidence of the defendant's knowledge, access and control of the child pornographic images.

In *United States v. Dobbs*, 629 F.3d 1199 (10th Cir. 2011), the Tenth Circuit concluded that Dobbs' conviction for receipt and attempted receipt of internet child pornography must be reversed because the evidence was insufficient to support the jury's finding of guilt. *Id.* at 1209. The prosecution proved only that two child pornography images were found in the cache of Dobbs' computer. *Id.* at 1202. The court found that this evidence was insufficient to support Dobbs' conviction because the prosecution failed to demonstrate that Dobbs knew about his computer's automatic caching function, had seen the images, or had any ability to exercise control over them. *Id.* at 1205, 1207. Therefore, the Tenth Circuit determined that while a jury could conclude from

that evidence that Dobbs — or at least his computer — received the images, no reasonable jury could find that he knowingly received the images.

In *Dobbs*, the court specifically rejected the prosecution's argument that proof of Mr. Dobbs' pattern of seeking out and downloading internet child pornography was sufficient circumstantial evidence to support Dobbs' conviction, because the prosecution could not show that Dobbs conducted a search for child pornography or visited child pornography websites "immediately prior to the creation of those two images in the cache." *Id.* at 1204. Therefore, proof of illegal searches was still insufficient where those searches could not be linked to the pornographic images for which the defendant had been indicted.

The Ninth Circuit also has demanded more than the mere presence of child pornography images in a computer's hard drive to prove knowing possession, when those images are found in an area of the computer that non-expert users do not know about or cannot access. In *United States v. Kuchinski*, 469 F.3d 853 (9th Cir. 2006), the defendant appealed his sentence because the court had taken into account additional images recovered on his computer after he pleaded guilty to receiving and possessing different child pornography images. *Id.* at 857. The court vacated his sentence because the additional images were found in the cache and the prosecution had offered no evidence to show that Kuchinski was a "sophisticated" computer user, had ever tried to access the cache, or "even knew of [its] existence." *Id.* at 862. The court therefore found that "[w]here a defendant lacks knowledge about the cache files, and concomitantly lacks access to and control over those files, it is not proper to charge him with possession and control of the child pornography images located in those files, without some other indication of domination and control over the images. To do

so turns abysmal ignorance into knowledge and a less than valedunarian grasp into dominion or control." *Id.* at 863.

Cases in which we and other circuits have upheld convictions for possession of digital images of child pornography are as telling as the cases in which the convictions were overturned. Affirmation of convictions have been based on substantially more evidence than a defendant's mere ownership and custody of the computer. In fact, the evidence introduced in those cases tended, independently of ownership or custody of the computer, to prove the defendant's knowledge and possession of the unlawful images or material concealed in the computer's hard drive. When the images are stored in inaccessible areas of a hard drive or could have been downloaded and retained by a computer's automatic processes without the computer owner's knowledge — such as temporary internet files or, as here, in the computer's disk slack space — courts have treated as determinative whether the defendant had sufficiently expert computer knowledge to know about and access those files or whether there were independent facts that showed the defendant's knowledge and dominion of child pornography images on the computer.

For example, in *United States v. Winkler*, 639 F.3d 692 (5th Cir. 2011), this court upheld a defendant's conviction for receipt and possession of child pornography because the government had produced sufficient evidence that "Winkler himself sought out, downloaded, viewed and had the ability to manipulate the images at issue in this case." *Id.* at 699. The prosecution produced evidence that illicit videos on Winkler's computer were "hidden . . . behind password walls in his . . . user account" or in "unnatural locations in the computer's file hierarchy rather than the normal location for downloaded

material." *Id.* It also provided evidence that Winkler paid for members-only access to a child pornography site and transmitted videos from this site to his computer. *Id.*

Similarly, in *United States v. Tucker*, 305 F.3d 1193 (10th Cir. 2002), the Tenth Circuit upheld a defendant's conviction for possession of child pornography in part because the prosecution presented evidence that Tucker admitted to the police that he viewed several thousand images of child pornography and that he intentionally deleted his computer's cache after viewing the images. *Id.* at 1197, 1204. The government also showed that Tucker paid a user fee to access newsgroups that gave him access to images of child pornography, and that he possessed the technical ability to access and manipulate the images stored in the cache. *United States v. Tucker*, 150 F. Supp. 2d 1263, 1265, 1269 (D.Utah 2001), *aff'd*, 305 F.3d 1193 (10th Cir. 2002).

In *United States v. Sanchez*, 59 M.J. 566, 570 (A.F. Ct. Crim. App. 2003), *aff'd in part, rev'd in part on other grounds*, 60 M.J. 329 (C.A.A.F. 2004), the U.S. Air Force Court of Criminal Appeals upheld a conviction for child pornography possession based on files located in a computer cache and on other files that had been deleted from the hard drive but were recoverable. In that case, the prosecution had presented evidence that the defendant was a subscriber of "numerous e-groups described as nude teen sites," that the child pornography images came through emails to an account to which only he had access, and that the defendant was "relatively sophisticated" in computer matters, such that a jury could find that he knew that the images were being downloaded. *See id.* at 570.

No. 09-60566

These cases show that courts have refused to find that a defendant constructively possessed child pornography located on his computer simply because the defendant exclusively possessed that computer, without additional evidence of the defendant's knowledge and dominion or control of the images. Where a defendant shares custody and control of the computer with other persons and the prosecution has not produced further evidence of knowledge of and access to the images, we must conclude that the proof of constructive possession is deficient for even stronger reasons.

## IV. Conclusion

In deciding whether a jury verdict is rationally supported by the evidence, we are bound to review all evidence and the inferences therefrom in the light most favorable to the verdict. *Shum*, 496 F.3d at 391; *United States v. Ragan*, 24 F.3d 657, 659 (5th Cir. 1994). As we said in *Crain*, "[a]lthough the strict nature of this standard demonstrates our reluctance to interfere with jury verdicts, this case is an example of why courts of appeal must not completely abdicate responsibility for reviewing jury verdicts." 33 F.3d at 487 (alteration in original) (quoting *Ragan*, 24 F.3d at 659) (internal quotation marks omitted). Because the evidence presented at trial was insufficient to provide a basis for a rational jury to find beyond a reasonable doubt that the defendant knowingly possessed child pornography, we REVERSE the judgment of the district court.

No. 09-60566

E. GRADY JOLLY, Circuit Judge, dissenting:

The record does not reflect whether the jury box had more than twelve chairs, but we do know—and we know for sure—that two more jurors are trying to crowd into the box. I respectfully dissent from the majority opinion, which is little more than a presentation of the defendant's case and the substitution of the views of judges for the views of jurors. The majority refuses to view the evidence, as it should, in the light most favorable to the verdict, but instead marshals the evidence to support the defendant's position, which the jury rejected. Furthermore, the majority examines each of the key evidentiary items only in isolation and effectively says that none of the individual items of evidence, standing alone, supports Keith Moreland's conviction, while ignoring the totality of the incriminating evidence.

First, and throughout its opinion, the majority embraces the primary defense argument—placing blame on Keith's dead father, George, instead of Keith himself—a credibility choice for the jury to make. Second, the majority molds the testimony of the government's computer analyst, Matthew Manley, to suit its purposes, arguing the testimony's weak points, while failing properly to accept its strong points, which were accepted by the jury. Third, the majority insists that no reasonable individual could have believed that Keith Moreland's behavior, after his wife discovered pornography on their computers, indicated his guilt—again, an inference for the jury to make.

I.

It is fundamental that "we view the evidence in the light most favorable to the verdict and uphold the verdict if, but only if, a rational juror could have found each element of the offense beyond a reasonable doubt." *See United States v. Brown*, 186 F.3d 661, 664 (5th Cir. 1999). After formally acknowledging this standard of review, the majority disregards it—and not only disregards it, but combs the record to make

No. 09-60566

every argument in favor of exoneration. When the proper legal standard is faithfully applied, it is manifest that we must uphold the jury's verdict of guilty.[1]

## II.

## A.

The majority overturns the conviction on the ground that "there was not sufficient evidence for a rational jury to find beyond a reasonable doubt that Keith knowingly and constructively had possession of the 112 digital images found in the computers' slack space." Majority Op. at 21.[2] This conclusion and holding necessarily require the majority to minimize the incriminating evidence in this case that the jury heard.

To review: The hard drives on both of the computers, which Keith's wife turned over to authorities,[3] contained child pornography; pornographic sites with teen themes

---

[1] I also specifically note that this court has recently implied that the evidentiary threshold in possession of child pornography cases such as this one may not be particularly high. See *United States v. Winkler*, 639 F.3d 692, 696 n.2 (5th Cir. 2011).

[2] I do not respond in depth to the majority's implicit point that none of the images are child pornography because that discussion is dicta. For the same reason, I decline to address the majority's implicit point that the government failed to prove that Moreland was aware that he was viewing child pornography, as opposed to legal pornography.

I briefly respond, however, to one example: the majority implies that the three to five seconds that jurors were given to examine each image was insufficient for the jury to determine whether the images were child pornography. As the government explained at oral argument, however, the jury would have been given additional access to the images during their deliberations upon request. The jury made no such request, suggesting that the properly instructed jurors were confident that the images they had earlier viewed were child pornography.

[3] By way of background, the two computers are a desktop and a laptop. The desktop had three user names, including Keith's; the only user name on the laptop was Keith's. Both computers were turned over to the authorities after Deanna discovered a pornographic site in the browsing history of both computers. Subsequent investigation showed that Keith's user profiles on each computer were the only profiles on *either* computer that contained pornographic files.

31

No. 09-60566

were regularly visited while these very same computers were logged in under Keith's name; these pornographic sites were on at least some occasions visited within seconds or minutes of Keith's Yahoo account being accessed; Keith made no meaningful attempt to assuage his wife's concerns immediately after she discovered one of the pornographic sites on the family computers and left with their children to go to her parents' home; and Keith and the defense witnesses waited until the eve of trial, well after George Moreland's death, to blame George for the crime.  In other words, there was plenty of evidence to support this conviction if the jury—as indeed it did—concluded that the "My dead Daddy did it" defense was deceitful and fictional nonsense.

Before addressing the majority's specific critiques of the evidence, I note that the majority employs an improper analysis in assessing the evidence of guilt:  it treats evidentiary items *individually* and independent of the whole; the analysis should ask whether *all* of the evidence, viewed as a *whole*, supports the conviction.  *See United States v. Miller*, 146 F.3d 274, 281 (5th Cir. 1998) ("No single piece of circumstantial evidence need be conclusive when considered in isolation; the question, rather, is whether the evidence, when considered as a whole, provides a substantial basis for the jury to find that the defendant's possession was knowing.").  With that said, I now turn to analyze the majority's itemization of reasons, notwithstanding the incriminating evidence of guilt the jury's verdict, the jury's resolution of credibility issues, and the proper standard of review in favor of the jury's verdict, that the appellate court should substitute its judgment for that of the jury.

B.

The rationale underlying the majority opinion is that Keith's father, George Moreland, was more likely the individual who possessed the pornographic images at issue.  In support of "blaming Daddy"—a "theory" presented to, *and rejected by*, the jury—the majority raises several argumentative points.

32

First, the majority notes that Keith, along with several of his family members (all biased witnesses, a fact that the jury apparently understood)—specifically, his wife Deanna, his brother Eric, and Eric's wife Kayla—all supported Keith's "blame Daddy" defense by testifying that George was a great pornographic fan.[4]  The majority further notes that Keith and Deanna testified that George frequently accessed the computers in Keith's home under Keith's user account and accessed his Yahoo account to play dominoes, among other things.  The primary problem with the majority's reasoning is that the government demonstrated to the jury that no one—and I mean *no one*—had intimated to law enforcement that George might have committed this offense until trial.[5]  The jury clearly was made aware of this.  Yet, the majority makes no explicit

---

[4] Notably, although Deanna testified that "[e]verybody that knew the man" was aware that George was a pornography customer, the defense was unable to muster a single disinterested witness to testify regarding George's thirst.  The jury took note.

[5] Deanna's testimony in this respect is somewhat contradictory.  She first testified that she had told the investigators that George "was a character that I was very suspicious of."  She also said that she had informed the investigators that George had access to the computers.  She further explained that she had said:  "I would like to bring up my father-in-law. . . . [H]e might be someone of interest."  On the other hand, Deanna also testified that she did not remember the investigators "specifically asking" whether George had access to the computers.  She then equivocated further, saying "I don't remember that coming up.  It should have."  Thus, her own testimony as to what she told the investigators about George is ambiguous at best.  The testimony of the investigators, however, paints a clearer picture.

James Burton, an investigator with the Federal Bureau of Investigation, testified that in his conversations with Deanna, she had indicated that "George Moreland may have had an inappropriate relationship with . . . Mr. Keith Moreland's daughter, which would have been [George's] . . . granddaughter."  Burton also testified that he did not remember Deanna mentioning that George had access to the computers. Tony Cooper, an investigator with the Lowndes County Sheriff's Department, confirmed that Deanna "never mentioned he [i.e., George] used the computers."  He further explained:  "[I]n the very beginning, I asked who had access to these computers.  She never mentioned him."  Finally, Matthew Manley, the computer analyst, testified that he did not remember Deanna mentioning George as a potential suspect.

Keith testified that his attorneys "advised [him] . . . not to" identify his father as a potential suspect, but almost immediately equivocated, explaining that "they didn't necessarily

33

No. 09-60566

attempt to justify this inexplicable delay,[6] but does concede, as it must, that the jury rejected this all too convenient and untimely canard.

Similarly, the majority points to no testimony that specifically indicates that George viewed pornography on the family computers. If viewed in the light most favorable to the verdict, the testimony suggests, at most, that George used his *own* computer to look at pornography.[7] Relevant to this point is the majority's implausible

_____

tell me not to go to the authorities. I just brought the information to them, and, you know, I thought I was acting like I was supposed to act."

The record also reflects that the government did not interview the brother, Eric Moreland, as part of its investigation. Eric explained, however, that he never made contact with the police, even after George asked Eric to help him destroy George's personal computer, because "it really didn't cross my mind to be important considering it was my father and he was not the one on trial." Similarly, although the government did not interview Eric's wife Kayla as part of its investigation, she admitted that she made no attempt to inform the government that George was worthy of investigation.

[6] In the closing argument at trial, Keith's trial counsel attempted to explain this failure, arguing that although these witnesses were aware that Keith was the subject of a criminal investigation, they did not notify law enforcement of their suspicions regarding George because they did not know the investigation of Keith was a serious matter.

The majority declines to adopt as its own any argument that ordinary adults were unable to comprehend that a criminal investigation is a serious matter.

[7] Deanna testified that George had access to the family computers at times when he was alone, and that George was a fan of pornography. She specifically admitted, however, that she "didn't check up on what he did, but he was certainly into—heavily, heavily into pornography." She also admitted that she and Keith discussed whether Keith should log out of the computers, thereby denying George access, but decided against it. Finally, she stated that "I knew that he [i.e., George] had looked at pornography. I had never [before this incident] seen anyone in our home looking at pornography of any kind."

Eric testified that George had limited access to his own computer: "there was a lot of folks on it all of the time and stuff, so it was not accessible for whenever he wanted to use it." He also appeared to testify, however, that George destroyed the very same computer after learning that Keith was being investigated. Presumably, the point of this latter testimony was to imply that George had used his computer to look at illegal pornography and later destroyed the evidence. The jury may well have found that these two points were inherently

No. 09-60566

attempt to shape the evidence in favor of reversal: its observation that someone, likely Deanna, contemporaneously accessed Keith's account along with pornographic sites at a time when Keith was at work on September 28, 2007. *See* Majority Op. at 22 n.7. To the majority, this single incident undermines the evidentiary value of the many other visits to pornographic sites that came on the heels of someone logging into Keith's account. The majority reasons that because it was not Keith logged into his account and looking at pornography on this one occasion, then no rational person could conclude that it was Keith on other occasions. Yet the jury did so conclude, perhaps because Deanna's discovery of pornography on a family computer, call to Keith to inform him of that discovery, and flight from her home to avoid a confrontation is a sequence of events that points to Keith, not George, having accessed that pornography.

The majority next turns to attack the testimony of Matthew Manley, a computer investigator for the city of Columbus who had analyzed the two computers that Deanna turned over to authorities. Indeed, the majority turns away momentarily from its assumed role as juror, assumes the role of defense attorney, and cross examines Manley in an effort to minimize his incriminating testimony before the jury.

Specifically, the majority notes that Manley admitted that an unsophisticated computer user would not have been aware that the images were on the computer. To be sure, Manley explained that the images were recovered from the "disk slack space," which, in his view, and in the light of his knowledge regarding the way computers work, indicated that someone had likely viewed the images on the internet and thereafter deleted the browsing history. Notably, Keith's trial counsel did not challenge Manley on this point. Of course, the jury was free to determine that

---

contradictory; on one hand, Eric says that George could not conveniently access the computer; on the other hand, he says (implicitly) that George used the computer to look at child pornography, and further says that George somehow destroyed his computer to which he only had limited access.

## No. 09-60566

someone, at some relevant time, knowingly assumed possession of these images. Indeed, the majority concedes—as it must—that the presence of child pornography on a computer's hard drive is evidence of prior possession of that pornography. Majority Op. at 6 n.2, citing *United States v. Kain*, 589 F.3d 945, 948 (8th Cir. 2009).

This evidence, when properly viewed in the light most favorable to the jury verdict—and notwithstanding the majority's efforts to weaken Manley's testimony—enabled the jury reasonably to infer that Keith had attempted to delete from his computer the pornographic images that he had downloaded (i.e., the images recovered from the slack space), and that he was simply unaware that the images were retrievable. The point is this: the majority makes every attempt to minimize and weaken Keith's possession of the images on his own computer, by repeatedly emphasizing that this evidence, standing alone, does not support the conviction. But the jury heard much more evidence pointing to his guilt.

The majority also attempts to discredit Manley for failing to specify when the illegal images were downloaded. Manley explained that because the images were recovered from the slack space, he was able to recover only the images themselves, and was not able to recover the time stamps. The jury understood this fact, and discredited the inference that the majority would give to this testimony, concluding instead that Keith was nevertheless the culprit. If we view this testimony in the light most favorable to the jury verdict, we should give credence to Manley's explanation.

Finally, the majority argues that Manley never testified that the pornographic sites that he had discovered in Keith's browsing history[8] contained child pornography.

---

[8] To review, Manley testified that pornographic sites, many with teen themes, were visited while Keith's user profile was logged into the computer and, furthermore, that some such visits occurred within seconds or minutes of Keith's Yahoo account being accessed. The majority argues that Manley admitted that anyone who knew Keith's log in password could have accessed the relevant accounts; the majority further argues that Keith and Deanna testified that George had access to Keith's accounts. In other words, the majority refuses to accept that the jury, after being presented with this evidence, discredited Keith and Deanna,

No. 09-60566

The majority's point is that Manley's testimony that the computer's browsing history included pornographic sites, including sites for teen pornography, does not, by itself, prove that Keith possessed child pornography. Manley's testimony permitted the jury to draw a reasonable *factual* inference that the same person who was frequenting these pornographic sites was the same person who had downloaded the illegal images. It seems that the majority misses the point: this browsing history is, at the very least, circumstantial evidence that someone who was using the same computers that contained illegal child pornography had an ample appetite for pornography depicting young women.

The majority next, and finally, focuses its aim on the evidence of Keith's purposeful avoidance of Deanna. To better explain this point, I briefly recount the relevant facts.

As I have earlier said, Deanna was using the desktop computer when she discovered a domain name in the browsing history that included the words "teen topanga." Deanna immediately confirmed that the laptop computer had been used to access the same site. After making these discoveries, she called Keith, who dismissed her concerns and remained at work. When Keith returned home that evening, he found Deanna and the children gone.[9] Despite this, he went to a fishing tournament the next morning; only after receiving a call from Deanna did he return home from the tournament.

---

and the jury alone observed the demeanor of these witnesses and their presentation of Keith's belated alibis.

[9] Deanna explained at trial that she had left because she was anticipating a "heated argument" with Keith and "didn't want the children to be present . . . ." She later testified, however—after the defense had more fully presented its theory that Deanna's dead father-in-law was the responsible party—that she had never believed that Keith was the individual responsible for viewing the pornography: "I couldn't believe it then, and I don't—I certainly don't believe it now."

No. 09-60566

The majority, assuming its role as juror, airily dismisses Keith's behavior, insisting that it fails to support an inference that Keith knowingly possessed child pornography. Keith's trial counsel argued just that, even contending that Keith's behavior reflected his innocence. Thus, the jury had two choices: it could believe that Keith's actions evidenced his innocence, or that his behavior evidenced his guilt. It decided on the latter. The jury was free to accept the defense's preferred argument, but it did not, and we are bound to review the evidence in the light "most favorable to the verdict[,]" *Brown*, 186 F.3d at 664, a rule the majority left at the starting gate of its opinion.

### III.

To sum up: The key reasons assigned in the majority opinion for reversal are: first, George was likely the culprit in this case; second, Matthew Manley did not determine when the images were deleted, did not determine whether the images came from any of the pornographic sites he found in the browsing history, and did not testify that those sites contained child pornography; and third, Keith's decision to avoid his wife Deanna after receiving an ominous phone call from her could not be interpreted as an expression of his guilt.

The majority defers to the defendant's belated alibi instead of deferring to the jury verdict. The resulting irony is that the jury of Keith's peers rejected his story as made-up nonsense, while the legally sophisticated majority accepted the story as fully plausible.

More serious than the resulting irony, however, is the majority's disregard for the proper standard for a review of the verdict of the jury and its autocratic reversal of a legally sound conviction.

I respectfully dissent.